Not Reported in F.Supp.2d                                                                                           Page 1
Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)
**(Cite as: 2000 WL 52152 (D.Del.))**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Michael JORDAN, Petitioner,
v.
Robert SNYDER, Warden, and M. Jane Brady, Attorney General of the State of
Delaware, Respondents.
**No. Civ.A. 97-385-SLR.**

Jan. 5, 2000.

Michael Jordan, Smyrna, Delaware, pro se.

Thomas E. Brown, Delaware Department of Justice, Wilmington, Delaware, for Respondents.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

**\*1** On April 7, 1997, Michael Jordan ("petitioner") filed this application for habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is currently incarcerated at the Delaware Correctional Center in Smyrna, Delaware. Robert Snyder and M. Jane Brady (collectively, "respondents") are the warden of the Delaware Correctional Center and the Attorney General of the State of Delaware, respectively. In his application, petitioner alleges a variety of constitutional violations. Initially, the court denied petitioner's application as a successive habeas petition for which petitioner had not obtained leave to file. *See* D.I. 1. On appeal, the Third Circuit vacated the court's order and remanded petitioner's application for consideration on the merits. [FN1] The court has jurisdiction by virtue of 28 U.S.C. § 1331. For the following reasons, the court shall deny petitioner's application.

> FN1. The Third Circuit vacated the court's order because petitioner's first habeas corpus application was denied for failure to exhaust state remedies and, in light of *Christy v. Horn,* 115 F.3d 201, 208 (3d Cir.1997), petitioner's second habeas application could not be deemed a "second or successive" petition. *See* D.I. 8 (Third Circuit Order).

II. BACKGROUND

The court gleans the following facts (which the court must accept as true, *see* 28 U.S.C. § 2254(e)(1)) from the Delaware Supreme Court's opinion affirming petitioner's conviction and from the Superior Court's opinion denying petitioner's motion for state postconviction relief. *See Jordan v. State,* No. 437, 1992, 1993 WL 245391 (Del.Supr. Jun. 23, 1993); *State v. Jordan,* Cr. A. Nos. IN91-02-1297R2, -1298R2, 1994 WL 637299 (Del.Super.Jun. 23, 1994). The court also has reviewed excerpts from the trial transcripts contained in petitioner's and in the State's appendices to their state court briefs. *See generally* D.I. 14.

On July 28, 1992, a Superior Court jury convicted petitioner of Possession with Intent to Deliver a Controlled Substance (Cocaine) in violation of 16 Del. C. § 4751(a) and Conspiracy Second Degree in violation of 11 Del. C. § 512. *See Jordan,* 1994 WL 637299, at \*1; *see also* D.I. 14, Appellant's Direct Appeal App., at A8 (indictment). This conviction followed a trial at which the State introduced the testimony of two undercover Delaware police officers. *See Jordan,* 1993 WL 245391, at \*\*1. The officers testified that they observed petitioner and his accomplice, James Flowers, standing at a street corner frequented by drug users. *Id.* When the police approached petitioner and Flowers, the latter tossed a bag containing crack cocaine vials to the ground. *Id.* After apprehending petitioner and Flowers, the police officers discovered two wads of cash in petitioner's pockets totaling $438. They did not find any controlled substances on petitioner. After being qualified as an expert witness, one of the officers testified that drug dealers frequently operate in pairs, with one acting as "the bank" by holding the money and the other handling the drugs themselves. *Id.*

Petitioner took the stand and denied that he was selling drugs with Flowers. Petitioner testified that he actually was waiting at the corner for his girlfriend and that the cash in his possession came from two paychecks, issued by a single employer, that he had cashed earlier in the day. In rebuttal, the State offered the testimony of an arresting officer, who testified that Jordan had told him that he had less money in his pocket than he actually did and that he had received the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00187-SLR   Document 27-4   Filed 02/22/2006   Page 2 of 8

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)
**(Cite as: 2000 WL 52152 (D.Del.))**

money from two different employers. *Id.* The State also offered the testimony of petitioner's girlfriend, who claimed that petitioner was unemployed at the time of his arrest.

**\*2** Just prior to the close of all the evidence, petitioner moved for a judgment of acquittal on the ground that the State's evidence was insufficient to meet its *prima facie* case. The trial judge denied this motion. *Id.* Following his conviction, the Superior Court sentenced petitioner to a term of twenty five years imprisonment, suspended for probation after a fifteen year mandatory term of imprisonment. *See Jordan,* 1994 WL 637299, at \*1. Flowers did not appear at petitioner's trial, having fled the jurisdiction. After his apprehension, a jury convicted Flowers of possession of cocaine but acquitted him of conspiracy.

Following his conviction, petitioner appealed to the Delaware Supreme Court. On appeal, petitioner argued only that the trial court abused its discretion in denying his motion for judgment of acquittal. *Id.* In support of this claim, petitioner claimed that the State had failed either to establish a relationship between petitioner and Flowers or to prove that petitioner had possession or control over the drugs in Flowers' possession. *Id.* The Supreme Court rejected these arguments and affirmed petitioner's conviction. Petitioner then filed a motion for postconviction relief with the Superior Court, which that court denied. *See Jordan,* 1994 WL 637299. The Supreme Court later affirmed the Superior Court's denial. *See Jordan v. State,* No. 270, 1994, 1994 WL 466142 (Del.Supr. Aug. 25, 1994). Petitioner filed a second motion for postconviction relief on April 5, 1995, which the Superior Court again denied. *See State v. Jordan,* Cr. A. Nos. IN91-02-1297R3, -1298R3, 1995 WL 339034 (Del.Super. May 15, 1995). The Supreme Court affirmed this second denial. *See Jordan v. State,* No. 241, 1995, 1995 WL 567011 (Del.Supr. Aug. 28, 1995).

III. STANDARD OF REVIEW

As of April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996) amended the standards for reviewing state court judgments in § 2254 proceedings. Since petitioner filed his habeas petition on April 7, 1997, following the enactment of the AEDPA, the court will apply the amended standards set forth in the AEDPA to petitioner's claims for federal habeas corpus relief. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

The federal habeas corpus statute, 28 U.S.C. § 2254, provides that a district court will consider a petition for a writ of habeas corpus presented by an individual "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court need not consider a petition unless the petitioner has fulfilled certain procedural requirements, such as having "exhausted the remedies available in the courts of the State." *Id.* § 2254(b)(1)(A). State remedies are unexhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." *Id.* § 2254(c). Thus, a petitioner must raise before the state court of last resort the factual and legal premises of the claims for relief asserted in the § 2254 petition. *See Chaussard v. Fulcomer,* 816 F.2d 925, 928 (3d Cir.1987); *Gibson v. Scheidemantel,* 805 F.2d 135, 138 (3d Cir.1986). The principle of comity underlies this exhaustion requirement, which allows state courts the first opportunity to pass on alleged defects in the criminal proceedings. A petitioner need not raise issues on collateral appeal that he addressed on direct appeal. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997). Generally, unexhausted state claims "must be dismissed without prejudice." *Doctor v. Walters,* 96 F.3d 675, 678 (3d Cir.1996). As an alternative to dismissal, the court may deny the petition on the merits despite petitioner's failure to exhaust state remedies. *See* 28 U.S.C. § 2254(b)(2).

**\*3** The AEDPA prohibits district courts from granting a habeas petition for any claim heard on the merits at the state level unless such previous adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* § 2254(d)(1)-(2). The Third Circuit has explained that this language mandates a two-part inquiry:

[F]irst, the federal court must inquire whether the state court decision was "contrary to" clearly established federal law, as determined by the Supreme Court of the

Case 1:05-cv-00187-SLR   Document 27-4   Filed 02/22/2006   Page 3 of 8

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)
**(Cite as: 2000 WL 52152 (D.Del.))**

United States; second, if it was not, the federal court must evaluate whether the state court judgment rests upon an objectively unreasonable application of clearly established Supreme Court jurisprudence.

*Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 880 (3d Cir.1999).

Additionally, the AEDPA increases the deference a federal court must pay to the factual findings and legal determinations made by state courts. *See Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996) (finding amended § 2254 to be a "more deferential test" with respect to state courts' legal and factual findings). Like the prior § 2254(d), amended § 2254(e)(1) provides that factual determinations made by a state court are presumed correct. *See* 28 U.S.C. § 2254(e)(1). The amended § 2254(e) goes further, however, by placing on the petitioner the burden of rebutting the presumption by clear and convincing evidence. *See id.* With these precepts in mind, the court now turns to an analysis of petitioner's claims.

IV. DISCUSSION

Petitioner lists four grounds for relief on the model § 2254 application form. Those grounds are (1) that the State convicted petitioner by using evidence obtained during an unconstitutional arrest, (2) that the prosecution failed to disclose exculpatory evidence, (3) that petitioner was denied effective assistance of counsel (specifically because his trial counsel did not interview Flowers), and (4) in what appears to be the underlying basis for the second claim, petitioner states only, "[t]he testimony of and from Mr. Flowers." (D.I. 2 at 5-6)

Petitioner also appends a list of twenty other grounds for relief on a separate, two-page insert to his application. These somewhat repetitive grounds for relief are identical to the claims presented to the Superior Court during petitioner's first and second petitions for postconviction relief. The Superior Court categorized them as follows:

> (1) evidence introduced at trial was insufficient to convict; (2) ineffective assistance of counsel, specifically: counsel's failure to object to proceeding with trial in the absence of Co-defendant Flowers, failure to file a Motion to Suppress evidence of the drugs found in Flowers' possession, allowing inadmissible evidence of a drawing of the scene of the crime, and raising only one claim on appeal; (3) prosecutorial misconduct, specifically: improper comments made by the prosecutor during sentencing, granting a lenient sentence to a witness in exchange for her testimony, and knowingly using perjured testimony at trial; (4) [petitioner's] sentence is cruel, harsh, and unjust; (5) the Confrontation Clause was violated by allowing into evidence statements made by [Flowers], who was absent from trial; (6) a drawing of the scene of the crime made by one of the arresting officers was erroneously admitted into evidence; (7) and several other general allegations, including: [petitioner's] trial was unfair due to unspecified errors, the Judge abused his discretion by allowing unspecified misconduct, and giving improper jury instructions....

**\*4** *Jordan,* 1994 WL 637299, at \*1. The court shall begin with an analysis of these latter twenty claims. Next, the court shall address petitioner's other four grounds for relief listed on the application form.

A. Petitioner's Twenty Grounds for Relief Listed on the Two-Page Insert

On postconviction relief, the Superior Court dismissed these twenty grounds for relief as either previously adjudicated under Super. Ct.Crim. R. 61(i)(4) or as procedurally barred under Super. Ct.Crim. R. 61(i)(3) for failure to raise them on direct appeal. Petitioner also presented these claims in either his direct or postconviction appeals to the Delaware Supreme Court. Thus, petitioner has exhausted his state law remedies with respect to these twenty claims. Nonetheless, this court may consider only those claims that the Delaware courts considered previously adjudicated, namely petitioner's sufficiency of the evidence and ineffective assistance of trial counsel claims (i.e., claims one, three, four, five, eight, twelve, fourteen, and eighteen on petitioner's two-page insert). These are the only claims on petitioner's two-page insert that petitioner actually raised in a timely manner before the Delaware Supreme Court. The remainder of petitioner's claims on the two-page insert are procedurally barred because petitioner failed to comply with the requisite state appellate procedures.

1. Grounds 4-5, 12, and 18

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                         Page 4
Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)
**(Cite as: 2000 WL 52152 (D.Del.))**

In these grounds for relief, petitioner contends that the State lacked sufficient evidence to convict him of Possession with Intent to Deliver a Controlled Substance (Cocaine) and Conspiracy Second Degree. Specifically, he alleges that the "[p]rosecution's entire case was based on nothing but assumptions and speculation" (ground four), that the "[p]rosecution failed to show [he] had any knowledge of drugs conceld [sic] on Mr. Flowers' person" (ground five), that "the court finding does not support a finding of guilt beyond a reasonable doubt" (ground twelve), and that "the evidence was clearly premature" (ground eighteen). The Superior Court found these claims to be procedurally barred on postconviction relief because petitioner had presented essentially the same argument to the Delaware Supreme Court on direct appeal. Thus, the Superior Court concluded that Superior Court Criminal Rule 61(i)(4) barred reconsideration of these claims because they were "formerly adjudicated" by the Supreme Court. *See Jordan,* 1994 WL 637299, at *2. Because petitioner has exhausted his state remedies and because consideration of these claims is not otherwise procedurally barred, the court may review the merits of plaintiff's insufficiency of the evidence claims. To this end, the court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' *Orban v. Vaughn,* 123 F.3d 727, 731 (3d Cir.1997) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). The court must apply this standard " 'with explicit reference to the substantive elements of the criminal offense as defined by state law .' " *Orban,* 123 F.3d at 731 (quoting *Jackson,* 443 U.S. at 324 n.16)).

**\*5** Under Delaware law, a person is guilty of Possession with Intent to Deliver a Controlled Substance (Cocaine) if he "possesses with intent to ... deliver a controlled substance or a counterfeit controlled substance classified in Schedule I or II which is a narcotic drug...." 16 Del. C. § 4751(a). Cocaine is a Schedule II drug. *See id.* § 4716(b)(4). The term "possession," as defined by the Delaware Code, includes "in addition to its ordinary meaning ... location in or about the defendant's person, premises, belongings, vehicle or otherwise within the defendant's reasonable control." 16 Del. C. § 4701(28). The Supreme Court of Delaware has explained that "the element of possession can be satisfied by a showing that the defendant was in constructive possession of the illegal substance at the time of the alleged offense." *See Hoey v. State,* 689 A.2d 1177, 1181 (Del.1997) (emphasis added). The State may prove a *prima facie* case of constructive possession in two ways. First, it must present evidence that the defendant: (1) knew the location of the drugs; (2) had the ability to exercise dominion and control over the drugs; and (3) intended to guide the destiny of the drugs. *See id.* Second, the State can show constructive possession by presenting "evidence linking the accused to an ongoing criminal operation of which possession is a part." *Id.* (citation omitted). The State may prove constructive possession solely through circumstantial evidence. *Id* .

In order to prove conspiracy in the second degree, the State must show that the accused "agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony." 11 Del. C. § 512. As part of this proof, the State must demonstrate (1) the accused's intent to further the conspiracy, (2) his agreement with a co-conspirator, and (3) the commission of an overt act. *See Skinner v. State,* 575 A.2d 1108, 1121 (Del.1990).

In light of the evidence offered at trial, the State met its burden of proving constructive possession with intent to deliver and conspiracy second degree. The State presented the testimony of two undercover police officers and petitioner's girlfriend. The officers testified that they observed petitioner and Flowers on a street corner in an area "notorious" for drug dealing. *See* D.I. 14, Appellant's Direct Appeal App., at A27 (Apr. 2, 1993). When the officers approached petitioner and Flowers, the latter discarded a bag containing twelve vials of a white substance. The State later determined that nine vials contained crack cocaine while three vials contained a non-controlled substance. *See id.* at A25. During a protective search of petitioner, one of the undercover officers discovered a wad of money in the amount of $438 organized in two, tightly packed rolls containing several different denominations of bills. *See id.* at A11-13, A22, A27.

**\*6** After having been qualified as an expert witness on drug

Not Reported in F.Supp.2d                                                                                                                   Page 5
Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)
**(Cite as: 2000 WL 52152 (D.Del.))**

arrests, one of the officers testified that Flowers and petitioner were involved in a two-tier drug trafficking operation. The officer supported his opinion by explaining that Flowers was apprehended with a relatively large quantity of cocaine. The officer related that mere drug addicts (as opposed to dealers) would never possess such a large quantity for the simple reason that addicts would use all of the cocaine at one sitting. *See id.* at A29. Moreover, the officer found no drug paraphernalia, such as a crack-pipe or a razor blade, on either Flowers or petitioner. *See* State's Direct Appeal App., at B10. This suggested that the vials were for sale rather than personal use. *See id.* The officer also testified that petitioner acted as the "bank" and that the "bank" usually is the principal in a two-tier drug sale. *See* Appellant's Direct Appeal App., at A27-29. Petitioner's girlfriend testified that, at the time of his arrest, petitioner was unemployed. She also testified that she was curious about where petitioner earned the large amount of money that he carried on his person. *Id.* at A31-32.

Thus, the State offered circumstantial evidence tending to establish that there was an ongoing criminal operation in which possession of cocaine was an integral part. *See Hoey,* 689 A.2d at 1181. This circumstantial evidence also would have enabled a rational fact finder to conclude that Flowers and petitioner were part of a drug trafficking scheme and that petitioner acted with the requisite intent by acting as the "bank" during the course of that conspiracy. [FN2] Petitioner took the stand to offer his own innocent interpretation of the events: namely, that he was merely waiting on the corner for his girlfriend when Flowers approached him. The jury, however, rejected this explanation. It is a jury's task at trial, not a court's on collateral appeal, to judge the credibility of witnesses and to resolve conflicts in testimony. *See Jackson,* 443 U.S. at 326 (explaining that, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume ... that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution"). Moreover, the State is not required to disprove every innocent explanation in a purely circumstantial case. *See Hoey,* 689 A.2d at 1182. Accordingly, the evidence presented at trial, viewed in favor of the prosecution, would enable a rational trier of fact to find beyond a reasonable doubt the essential elements of constructive possession of cocaine and conspiracy in the second degree.

> FN2. The fact that Flowers was later acquitted of the conspiracy charge leveled against him does not affect petitioner's conspiracy conviction. Under Delaware law, one may be convicted of conspiracy even though the State failed to apprehend or convict the other conspirators. *See* 11 Del. C. § 523(b); *Walls v. State,* 560 A .2d 1038, 1047 n.14 (Del.1989).

2. Grounds 1, 2, 6, 7, 9-11, 13, 15-17, and 19-20

These grounds for relief were raised in identical format for the first time in petitioner's postconviction appeal before the Superior Court. *See Jordan,* 1994 WL 637299, at *1; *see also* D .I. 14, Appellant's Opening Supreme Ct. Br. on Postconviction Appeal, at 2-3 (Jul. 12, 1994). Stated concisely, these claims allege prosecutorial misconduct, Confrontation and Due Process Clause violations, and that his sentence violates the Eighth Amendment. Both the Superior and Supreme Courts found these claims to be procedurally barred because petitioner failed to raise them on direct appeal. *See* Jordan, 1994 WL 637299, at *2-3; *see also Flamer v. State,* 585 A.2d 736, 747 (Del.1990) (explaining that failure to raise claims at trial or on direct appeal constitutes procedural default under Super. Ct.Crim. R. 61(i)(3)). In addition to finding these claims procedurally barred, the Superior Court also rejected them on their merits. *See Jordan,* 1994 WL 637299, at *2-3.

*7 Generally, federal district courts may not review questions of federal law decided by a state court where the state court's decision "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v.. Thompson,* 501 U.S. 722, 729 (1991). This rule applies whether the state law ground is substantive or, as here, procedural. *Id.* Rule 61(i)(3) serves as an independent and adequate state law ground barring habeas corpus review. *See Carter v. Neal,* 910 F.Supp. 143, 150-51 (D.Del.1995); *Flamer v. Chaffinch,* 827 F.Supp. 1079, 1087-88 (D.Del.1993), *aff'd,* 68 F.3d 710 (3d Cir.1995). Consequently, the court must dismiss claims one, two, six, seven, nine, ten, eleven, thirteen, fifteen, sixteen,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 6
Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)
**(Cite as: 2000 WL 52152 (D.Del.))**

seventeen, nineteen and twenty as procedurally barred unless petitioner establishes either (1) cause for his procedural default and resulting prejudice or (2) that a miscarriage of justice would result if the court refused to consider these claims. *See Coleman,* 501 U.S. at 750.

To show "cause" petitioner must establish "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). As cause for his procedural default, petitioner alleges that his counsel failed to raise numerous issues on appeal. If his appellate counsel's performance was constitutionally ineffective under the Supreme Court's test outlined in *Strickland v. Washington,* 466 U.S. 668 (1984), it would constitute sufficient cause to excuse petitioner's procedural default. *See Sistrunk v. Vaughn,* 96 F.3d 666, 675 (3d Cir.1996). Thus, the court must determine whether petitioner's appellate representation fell below constitutional standards.

In *Strickland,* the Supreme Court articulated a two-part test for evaluating ineffective assistance of counsel claims. First, a petitioner must demonstrate that counsel's performance at trial or on appeal fell below "an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. In the context of alleged appellate errors, the Supreme Court has explained that an appellate counsel's failure to raise an argument constitutes ineffective assistance under the *Strickland* test only if the error was "sufficiently egregious and prejudicial." *See Smith v. Murray,* 477 U.S. 527, 535 (1986). Indeed, the Supreme Court noted that "the process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Id.* at 536 (quoting *Jones v. Barnes,* 463 U.S. 745, 751 (1983)). In addition to showing an "objectively unreasonable" error, petitioner also must demonstrate that his counsel's error prejudiced him. *See Strickland,* 466 U.S. at 691-92. Prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Sistrunk,* 96 F.3d at 670.

*\*8* On appeal, petitioner's counsel argued that the trial court erred in denying the motion for judgment of acquittal. *See* D.I. 14, Appellant's Op. Br. on Direct Appeal, at 8-16 (Apr. 2, 1993). In the course of this argument, petitioner's counsel attacked the sufficiency of the State's evidence. Petitioner claims, however, that he informed his counsel "time after time" to raise a number of other claims. Tellingly, petitioner does not specify what claims he wanted his counsel to pursue. Nor does petitioner's conclusory assertion of ineffectiveness overcome the presumption that his appellate counsel reasonably winnowed out weaker arguments and presented only the strongest to the Delaware Supreme Court. *See Smith,* 477 U.S. at 536.

It is petitioner's burden to come forward with evidence sufficiently probative to prove that his counsel's conduct on appeal was egregious, *see id.* at 535, and petitioner's mere assertion of ineffectiveness does not satisfy this heavy burden. Therefore, petitioner has not established cause for his procedural default. As such, the court need not assess whether he has suffered actual prejudice. *See Bailey v. Snyder,* 855 F.Supp. 1392, 1402 (D.Del.1993), *aff'd,* 68 F.3d 736 (3d Cir.1995).

Alternatively, the court can consider an otherwise procedurally barred claim if petitioner demonstrates that failure to do so would constitute a "miscarriage of justice." *See Schlup v. Delo,* 513 U.S. 298, 314-15 (1995). This exception applies only in "extraordinary cases." *Id.* at 321. To establish a miscarriage of justice, petitioner must show that it is more likely than not that no reasonable juror would have convicted him. *See id.* at 326. A review of the trial court proceedings reveals that the State presented sufficient evidence to persuade a reasonable fact finder of petitioner's guilt. On habeas corpus review, petitioner has offered no new evidence that would preclude a reasonable fact finder from convicting him. Therefore, petitioner has failed to demonstrate a "miscarriage of justice," and the court shall dismiss the aforementioned claims as procedurally barred.

3. Claims 1, 3, 8, and 14

These claims amount to an assertion of ineffective assistance of trial counsel. Petitioner raised these claims to both the Superior and Supreme Courts in his postconviction appeal. Therefore, petitioner has exhausted his state court remedies, and the court shall address petitioner's ineffective

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                             Page 7
Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)
**(Cite as: 2000 WL 52152 (D.Del.))**

assistance of counsel claims in light of the *Strickland* test outlined above. At issue is whether the Delaware courts' rejection of petitioner's ineffective assistance claims was "contrary to, or involved an unreasonable application of clearly established federal law." *See* 28 U.S.C. § 2254(d)(1)-(2); *Matteo,* 171 F.3d at 880.

Petitioner alleges that his trial counsel was ineffective (1) for failing to object to proceeding with trial in the absence of Flowers, (2) for not moving to suppress introduction of the cocaine vials at trial, (3) for not objecting to the use of a diagram of the scene of the crime, (4) for not objecting to unspecified "improper conduct" by the prosecutor.

**\*9** With respect to the first alleged instance of ineffective assistance, petitioner appears to argue that his counsel erred in proceeding without Flowers because Flowers would have testified that petitioner was not involved in a drug transaction. Petitioner, however, has offered no proof that Flowers would have so testified. [FN3] Petitioner's vague and conclusory allegations that "some unspecified and speculative testimony might have established his defense" cannot support an ineffective assistance of counsel claim. *See Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3d Cir.1991). Indeed, it may have been sound trial strategy to proceed without Flowers to avoid the prospect of Flowers "cutting a deal" and testifying on behalf of the prosecution. What is more, at the time of petitioner's trial, Flowers had fled the jurisdiction, and petitioner's counsel may have concluded that a speedy trial for petitioner outweighed the uncertain benefits of waiting for Flowers' eventual apprehension. In short, petitioner has not overcome the presumption that it was sound strategy to proceed with trial in the absence of Flowers.

> FN3. Petitioner has offered only a March 15, 1995 affidavit by Flowers claiming that petitioner was not involved in a drug transaction. This affidavit proves nothing about Flowers' willingness to testify about petitioner's innocence at the time of petitioner's trial. Moreover, the fact that Flowers fled the jurisdiction prior to petitioner's trial strongly suggests that Flowers was unwilling to testify at all.

Petitioner also founds his ineffective assistance claim on his attorney's failure to suppress evidence of the cocaine vials. Petitioner, however, had no standing to object to the seizure of evidence abandoned by a third person. *See United States v. Varlack Ventures, Inc.,* 149 F.3d 212, 215 (3d Cir.1998) (citing *Rakas v. Illinois,* 439 U.S. 128, 143 (1978)). Accordingly, his counsel's refusal to press this objection did not fall below an objective standard of reasonableness. His counsel's failure to object to the street diagram also did not constitute ineffective assistance. As the Superior Court noted, the diagram itself was not admitted into evidence. *See Jordan,* 1994 WL 637299, at \*3. Moreover, petitioner does not explain how it prejudiced him. Finally, petitioner does not explain why his counsel should have objected to the prosecutor's conduct or how the prosecutor's conduct prejudiced him. Bald and conclusory assertions cannot support an ineffective assistance of counsel claim. Because petitioner's ineffective assistance of counsel claims do not satisfy the *Strickland* test, the Superior and Supreme Courts reasonably applied federal constitutional law in concluding that petitioner did not suffer from constitutionally ineffective assistance of counsel.

B. Petitioner's Claims for Relief Listed on the Model § 2254 Form

Petitioner lists four grounds for relief on the model § 2254 form. In essence, there are only three because his fourth ground for relief ("The testimony of and from Mr. Flowers") is nonsensical on its own and appears to support his second ground for relief. Petitioner first argues that the crack cocaine vials introduced as evidence during his trial were obtained pursuant to an unlawful arrest. Second, petitioner alleges that the prosecution violated his Due Process rights by withholding the allegedly exculpatory testimony of Flowers. Third, petitioner alleges ineffective assistance of counsel founded on his attorney's alleged failure to interview Flowers prior to trial. Petitioner presented each of these arguments to the Delaware Supreme Court in his second postconviction relief motion. *See* D.I. 14, Appellant's Br. (Jun. 12, 1995). As such, petitioner has exhausted his state remedies with respect to these claims. The Supreme Court did not address petitioner's arguments on the merits. Instead, that court summarily affirmed the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                            Page 8
Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)
**(Cite as: 2000 WL 52152 (D.Del.))**

Superior Court's rejection of petitioner's second postconviction motion. It appears, though, that petitioner presented these four claims for relief only to the Supreme Court and not to the Superior Court. Because of this confusion, the court will address petitioner's claims on the merits.

1. Seizure of the Crack Cocaine Vials

***10** Petitioner contends that the crack cocaine vials introduced as evidence at his trial were seized during an unlawful arrest. The record reveals that Flowers threw the vials to the ground before the police arrested him. Indeed, Flowers abandoned the drugs even prior to being stopped and frisked. *See* D.I. 14, Appellant's App., at A18-20 (Apr. 2, 1993). Contraband abandoned by a suspect in such circumstances cannot be the fruit of an unlawful seizure. *See California v. Hodari D.,* 499 U.S. 621, 629 (1991). Moreover, petitioner has claimed no ownership interest in the drugs and, therefore, he had no privacy interest in evidence abandoned by Flowers. *See Varlack Ventures, Inc.,* 149 F.3d at 215 (citing *Rakas,* 439 U.S. at 143). Consequently, petitioner's first ground for habeas corpus relief is without merit.

2. Prosecutorial Misconduct

Petitioner claims that the prosecution withheld the allegedly exculpatory testimony of Flowers. There is no record evidence to support this assertion or, indeed, any inference of prosecutorial misconduct. Petitioner must set forth specific facts to support his contention. *See, e.g., Zettlemoyer,* 923 F.2d at 298. Having failed to do so, he is not entitled to habeas relief on this claim.

3. Ineffective Assistance of Counsel

Petitioner claims that his legal representation was constitutionally deficient because his attorney failed to interview Flowers. Petitioner has not offered proof that Flowers would have offered favorable testimony or proof that Flowers would have testified at all. Indeed, the fact that Flowers fled the jurisdiction before petitioner's trial suggests that he was reluctant to testify on petitioner's behalf. Moreover, at no point in the *post hoc* affidavit submitted by Flowers does he indicate that he was willing to incriminate himself by testifying on petitioner's behalf. Viewed in this light, petitioner's counsel did not act unreasonably in failing to interview Flowers. *See United States v. Dawson,* 857 F.2d 923, 928 (3d Cir.1988) (explaining that counsel was not ineffective for failing to interview witnesses where there was no evidence that they were willing to testify on petitioner's behalf). Accordingly, petitioner is not entitled to habeas relief on this claim.

V. CONCLUSION

For the aforementioned reasons, the court shall deny petitioner's application for habeas corpus relief. An appropriate order shall issue.

Not Reported in F.Supp.2d, 2000 WL 52152 (D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.