In United States District Court
    For the District of Delaware

James St. Louis
    petitioner                                    Civ. Act. No 05-187
        V                                                      SLR
Thomas L Carroll
warden and M Jane Brady
attorney general for St. of Del
    respondent

FILED

MAR 10 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
Scanned

Answer to States Response

State court equally with Federal courts
are charged with duty of protecting an
accused in enjoyment of his constitutional
rights. The twelph Amendment says states
accept authority to protect individual
constitutional rights. (see FAY v NOIA 83 Sct 822 (1963)
And pursuant to Rule 61 (i) (5) the bars
to relief in this subdivision shall not apply
to a claim that the court lacked judicial
authority or to a colorable claim that there
was a "miscarriage of justice" because
of a constitutional violation that undermined
the fundamental legality, reliability, integrity
or fairness of the proceedings leading to
the judgement of conviction. [also see US v
Christian 571 F2d @ 69-70 and FAHY v St OF Conn 3754585.]

1.

Trial error infringed on constitutional rights we have previously learned must be reversed unless it is found that the error was harmless beyond a reasonable doubt. In a resent ruling we hear "Federal rules of evidence do not govern state court proceedings, states are free to adopt whatever evidence rules they wish so long as they [ do not ] violate federal constitution" see Williams v Price 343 F3d 222 (3rd Cir 2003) before Judge Alito.

The Supreme court has also said "showing that actual or legal bases for claim was not necessarily available to counsel or that some interference by officals made Compliance with state procedural rule impracticable would constitute cause for procedural default." see MURRAY v CARRIER 106 SCt. 2639 (1986)

Simmons v Beard 356 F. Supp 2d 548 (2005) quoting BURSEY v WEATHERFORD 528 F2d 483 (1975) said that "whenever the prosecutor knowingly arranges or [ permits ] intrusion into the attorney - client relationship the right to counsel is sufficiently endangered to require reversal,"

In St. Louis' case we see a magnificent violation of Constitution and due process rights that was shown and argued in his post conviction petition. Ms. McFarlan said

2.

that defendants' counsel suggested to read
instructions to the jury about prior bad acts
being entered into court with out prior
instructions and staying to product of the
bill of particulars, especially when it considered
information outside of Delaware jurisdiction.
But what she hasn't address was why
defendant and prosecuter and defendant writing
attorneys all agree to Judge not to file a
plain error claim and defendants attorney
and assistant attorney said they couldn't
say instructions fixed judicial mistake. I
believe that, at that point, ended attorney-client
loyalty and shifted the balance to Judge-attorney.
And seeing there was a more arguemental
issue to bring to direct appeal due process
was lost at that point. Adding said video
was provided to Jury during deliberation
without the special instruction need or
elimination of illegal prior comments.
see US v Randazze 80 F3d 623 (1996)
    KOO v McBRIDE   124 F3d 869 (1997)
And as we can read in RIVERA v CONWAY
350 F. SUPP. 2d 536 "failure to raise an
argument on appeal constitutes ineffective
assistance only when the omitted issue
is clearly stronger and more significant
than those presented. St. Louis and his

3.

defense counsel did discuss his direct appeal. And double jeopardy was [not] the issue [they] decided to fight with. The issue was constitutional violations discussed in 61 post conviction motion.

Also addressed in St. Louis' post conviction motion was the fact that Mr. Haller discussed with Ms Dunn and Ms Withers about a party coming up and Ms Dunn should go, because she has to work with everyone there day in and day out and need to get along with everyone. Again I felt like I lost attorney client loyalty. (see exhibits C-21, C-27, C-28 for prior instruction conversations)

The Delaware District Court in KIRK v CARROLL 243 F SUPP 2d 125 (2003) said a "Federal Court may issue writ of habeas corpus only if it finds that state court decisions on merits of claim either (1) was contrary to clearly established federal law or (2) involved unreasonable application of clearly established federal law. 28 USCA § 2254(d)(1)

Under Miscarriage of Justice we see where it says the phrase "miscarriage of justice" is not limited to claim that innocent person was convicted but also applies if petitioner makes colorable claim of mistaken waiver of important constitutional rights. see Sup. Court Criminal Rule 61, 61(i)(C,5)

4.

Del C Ann. Sup. Ct. Rules, Rule E Del C
Ann. U.S. CA Const. Amend. 5, 14 and
Webster v State  604 A 2d 1364
Criminal law 1586

In St Louis' post conviction petition
he argued how Judge Stokes representing
the state and himself decided in his
own favor and procedurally barred judicial
arguments against himself that would show
cause. In Los v Los  595 A2d 381
it says "y a judge were named in/as a
party in the proceedings before him, he
would be [ required ] to recuse himself
automatically in compliance with Cann.
3 c (1) (d) (i)  abuse of descretion.

This was brought up to the Delaware
Supreme Court and was ruled that they
couldn't rule on it only procedural
bar, which I believed I did show cause.
by discussing this issue along with the rest.

As you can see there is a stronger
issue to address, which Mr. St. Louis,
and his attorney addressed not only
at trial but upon completion. This
issue was what Mr. St. Louis believed
his attorney's would address in his
direct appeal. It is the admissibity of
the [ hearsay statement ].

5.

St Louis did object to admittance
of statement due to voluntarism as Ms
McFarlan has admitted but the argument
goes much deeper.

St Louis did argue admissibility and
procedures in his post conviction petition.

In Rooks v State Del Supr. 401 A2d
943 we see where it was ruled the
statement inadmissible if inducement
under totality of circumstances results from
behavior of State's law enforcement officers
which were such as to overbear codefendant
will to resist and bring about statements
not freely [self-determined.] We also
read where it says possibility of coercion
by improper [conduct] and [procedures] is
no less present in out of-court [statements]
of witnesses than it is in out-of-court
[confessions] by defendants and each
should be scrutinized under same
standards. (11 Del. C 3507 (a).

A court must follow the Massachusetts
rule and, thus, hear [all] of the
evidence and rule on voluntarism
[before] allowing a confession or statement
into evidence and, if it finds statement
voluntary [must] instruct jury
that it must find that confession was

6.

voluntary before it may consider it.
11 Del C § 3507 (a)   also see
Jackson v Denno  378 U S 368
84 S Ct. 1774.

Inquiry with respect to voluntarism
of a statement given to officials is
whether behavior of interrogators was such
as to overbear will of interrogated to
resist and bring about statements not
the product of a rational intellect
and a [free will] without regard
to the truthfulness or reliability of
the statement. 11 Del C 3507(a)

Basic procedures for admitting the
statements of a witness under 11 Delc 3507(a)
is set forth in Keys v State Del Sups
337 A2d 18 (1975) and supplemented
as to the requisite procedures for determining
the voluntariness of the statement by
Hatcher v State Del Sup 337 A2d 30 (1975)

The Hatcher court also determined
that the possibility of coercion by
improper conduct is no less present
in out-of-court statements of witnesses
than it is in out-of-court confessions
by defendants and that each should
be scrutinized under the same standard.
In State v Winsett Del Sups. 238 A2d

7

821 (1968) then Chancellor Duffy, laid down the guidelines for the determenation of voluntariness which the courts have approved and followed.

"To be voluntary, a statement, written or oral, must have been given without duress or coercion. It must have been given free of any promises or threats by others. A statement, which was prompted by mental or physical Coercion, or by duress or [intimidation,] is not voluntary because it was not the product of a free will." Cf State v Winsett Del 205 A 2d 510, 520 (1964)

If in fact defendant or witness will was overborne, or if the statement was not the product of a rational and intelligent free will, it was [not] voluntarily made because it was Coerced. Payne Arkansas 356 U S 560, 566, 78 S Ct 844.

In the U. S. Supreme Court Justice Stewart delivering the opinion of the Court, wrote, inter alia:

"But any criminal trial use against a defendant of his involuntary statement is a denial of due process of the law: even though there is ample evidence aside from the confession to support the Con viction" (Citation omitted)

8

Chancellor Duffy also said "the attention of the trial Judge [must] be focused on a 'totality of circumstances' overview of the behavior of the interrogators and the mental and physical make up of the individual being interrogated. This [must] be done on a case by case bases, to reach an ultimate determination on the voir dire record, as to whether the behavior of the interrogator was such as to overbear the will of the interrogated to resist and bring about a statement [not] "the product of a rational intellect and a free will" without regard to the truthfulness or reliability of the statement". Rogers v Richmond 365 U S 534, 81 AC 735 (1961)

In St. Louis case this stronger argument wasn't used when Judge Stokes neither looked at or addressed Coercion by [not] looking at all the evidence, said video was [not] watched by Judge Stokes to insure non coercion, which we know existed in Busbo Richardson's own testimony when he said he kept asking the same questions because alledged victum didn't know the truth. It was also addressed when

9.

St. Louis brought forth the claims to his attorney that alledged victims biological father and girl friend promised presents and gifts after Judy Stokes address to Ashley no conversation with anyone. Prior to alledged victims dinner with father during trial she refused to testify and said she could not remember. After trial biological father met with Prosecutor and was shown video tape deposition and had meeting with Ms Withers, after which he took Ashley and her sister to dinner and made promises of material gifts if she would testify against St. Louis. They went over testimony Ashley would say also telling both Kasie and Ashley [not] to say anything to anyone especially the Judge. Upon coming home Kasie explained everything that happened to her mother and she relayed it to Mr. St. Louis.

St. Louis told attorney Haller and said to St. Louis nothing could be done because it would have to be done through prosecutor and she probably was the driving force for this action. Again St. Louis felt Attorney - Client Relationship was lost.

10.

St. Louis argued under 3511 Videotaped Depositions [are] procedures for child witnesses. That said deposition should have followed these rules which include confrontation, but St. Louis also argues if the state argues not deposition but a statement as they did in Crawford v State in 2004 St Louis ask why 3511 also address procedures for video taping, which to his understanding would be [all] videotaping wether deposition or statements. We have already argued how important the 6th Amendment and confrontation is when depositions or statements are videotaped to insure a defendants rights. And we have already shown where Judge Stokes never watched said video so how could he decide on its truthfulness. And who's truth was being told. We believe if the proper rules of the state and Federal Government and the Constitution that not only would video not be introduced into court but the manipulation by Richardson, which he admitted, would not had been able to exist at all and no case could have been filed against St. Louis. And seeing that this video was

11.

The only evidence against St. Louis along
with the coercion of Ashley to testify as
to illegal video no court hearing would
have existed. (see exhibit A for 3511 procedures)
    In Flauner v State A2 (Del Aug 31, 2004)
trial court did not abuse its discretion
in ruling ( after reviewing the tape)
that the statement was voluntary. We see
where this issue was addressed and
emphasis was put on viewing before jury
introduction. This question along with
letting jury review said video without
presence of attorney and St. Louis during
deliberation is more than significant to
overturn this case. We aske this
court to review all St. Louis' complaints
and see where he did show cause and
absolute innocence and ask that the
illegale video statements be thrown out
never to be reused and set St. Louis
free immediately. St. Louis ask for
sanctions on all parties for violating
a known constitutional rights and
federal and state laws. So that these
actions that are done day in and day
out will stop and the people responsible
punished to show this will [not] be
tolerated.

Now besides the arguments stated
above the second part of the states argument
is ineffective assistance of counsel.

First St Louis would like to address
the porno tape which not only showed
accuses knowledge but also showed
accuse exact testimony as to the taste,
onions, and color, orange, of semen.
If defense counsel would have only
viewed tape he would have been able
to make a proper decision as to who
should view video and if it was tactically
advantage to just assumed it had
nothing to offer. Second the state argues
the medical report. Yes vaginal and
anal intercourse was not an issue
in the Bell of particulars but it was
in the original arrest warrant and
the insertion of fingers into the vigina
numberous times was an agent of the
Bell of Particulars. This alone, with
medical records showing no signs of sexual
intrusion into the two areas, would have
been sufficient for reasonable doubt not
only truthfulness of alledged victum. And if
it wasn't so important why did the
prosecutor bring up the argument to
the jury of no medical report and about

porno graphic tape) and how important it
would be [if] it existed at all when
questioning the arresting officer.

Not only did defendants attorney call
two very important witnesses but he also
failed to find and question them. It was
discussed how alledged victims cousin and
friend spent the night together and played
truth or dare. Things as you know are to
outdo the other. The first told how she
saw her mother have sex with another
woman the second how her father
spanks her while she is naked so
the alledged victim had to come up
with something better and said she had
sexual relations with Mr. St. Louis
and the friends father called the school
to inform what his daughter told him,
and things just avalanched from there.
A number of time alledged victim denied
oral sex until it was so difficult and she
believed she'd be in trouble so just admitted.
We can see in the video tape statement
how Richardson manipulated alledged
victim and admitted in sworn
testimony she didn't know what the truth
was and he did, so he kept asking
her the same question until he go what

14

he wanted her to say. In Jelinek v Coslello
247 F. Supp 2d 212 and USCA Constitution
Amendment 6 it says " counsel is ineffective
for failure to consult experts knowledge
about the susceptability of children
to suggestive questioning — if investigator
or caseworker showed signs that
interrogation were improperly or unduly
suggestive". And through Richardson's
own testimony he admitted he influenced
alledged victum to the statement of telling
his truth because she didn't know what
the truth is. Going along with that we
see in US v O'Connor 64F3d 355, 359–60
were it says due process violated by
failure to disclose witness' attempt to
influence testimony of another witness
during trial because witness' testimony
was the only evidence against defendant "
Not only did Richardson violate due process
but St. Louis' attorney was told of
biological father and gurlfriend and
prosecutor meeting to view video statement
then biological father and gurlfriend
promissing presents if alledged victum
testified at trial per video statements.
and did nothing to bring it to judges
attention. Last but not least we

15.

look at two items addressed in the
same argument of ineffective assistance
claims. In Shaw v State Delaware Supr
282 A2d 608 (1971) we read "prejudice
from violation of right of presence need
not be proved → The right is so fundamental
that it exists unless waived, even
though no actual prejudice may be
provable". In US v Rolle 204 F3d 133
it says "the confrontation clause of the
6th Amendment and the due process
clause of the 5th Amendment together
guarantee a defendant charged with
a felony the right to be present at all
critical stages of his trial" USCA 5,6
also see Whelchel v Washington 232 F3d 1197 (200.
It also says readback to jury outside
of defendant and his Counsel is a
violation of defendant rights. The other
part of this argument already argued
said the jury must have specific reasons
to rehear or review statements. In
Webb v Lewis 44 F3d 1387 (1994) it says
"Admission of videotaped of interview
between social worker and alledged child
abuse victim, which was also brought
into jury room during deliberation violated
defendant's right to confront evidence

16.

against him and had acted and
prejudicial effect on jury  also see
US v Brown  532 F2d 128 (1987)

The prosecutor has no authority to set
as a 13th juror and cast a ballot
on the issue. She has no right to offer
said video not just once but a number
of times to juror without their specific
reasons, see US v Splain 545 F2d 1131
and by doing so she injected her own
personal opinions and belief upon the
jury and acted as a 13th juror violated
defendant due process. also see ABA
Standards Relating to administering of
Criminal Justice  and Code of Prof. Responsibility
DR-7-106c (4) 1981  and should be
held subject for and to sanctions for this
and all previous inapproate actions.

In St v Peder  857 A2d 808 (2004)
it says " Any improper evidence that may
have a tendency to excite passion,
awaken sympathy or influence judgement
of jury cannot be considered harmless.
also see St v Arofico  425 A2d 560 (1979)

In US v AKridge  346 F3d 618 (2003
it say the " 4th Amendment exclusionary
rule generally bars admissibility at trial
of tangible evidence as well as verbal

statements, acquired through unconstitutional
means.
        see US v Howard 210 F Supp 2d 503 D (2002)
            US v McClay 148 F Supp 2d 379 D (2001)
    In Mitchell v Mason 325 F3d 732 (2003)
the court said "when counsel is totally
absent during a critical stage of the
proceeding, prejudice [must] be presumed
for purpose of an ineffective assistance
of counsel claim" USCA 6  and the
US Supreme Court in Cronic 104 SCt
2039 (1984) said the same thing.
as did the 3rd Circuit in 2003 in
U. S v Toliver 330 F3d 607.
        Lastly in US v Montgomery 150 F3d
983 (1998) it says "allowing jury to
reread transcripts of a witness' testimony
may place undue emphasis on testimony
considering a second time at such a
late stage of the trial." Not only was
it a late stage but during deliberation
without St. Louis or his attorney to
be present in violation of his 6th Am.
rights.
        All these arguments listed above
were discussed with St. Louis and
his attorney yet his attorney filed
an arguement that defendant attorney
                18

knew wouldn't rock the boat. His attorney client loyalty went out the window and he respected and relied upon his attorney judge and attorney prosecutor loyalty because he has to work with them everyday day in and day out. This whole arguement involves many miscarriages of justice with Constitutional violations along with Delawares only violators of law St. Louis is asking for immediate release and sanctions for all guilty parties and compensation not only to St. Louis but also to his family which have been suffering now for 5 years. St. Louis' attorney answer to ineffective assistance claims was he did the minimum required by the Supreme court rules. ???

James St. Louis Jr.

19.

Certificate of Service

I hereby certify that on March 7, 2006
I mailed an answer to the states
answer to the habeas petitioner with
the clerk of District Court. I also hereby
certify that on March 7, 2006 I have
mailed by United States Service, two copies
of the same document to the following
non registered participant.

Elizabeth R McFarlan
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, De 19801

James St. Lewis
SBI # 446518
Delaware Correctional Cen
1181 Paddock Rd
Smyrna De
19977

20

evidence limited specifically to the rebuttal of such evidence introduced by the prosecutor or given by the complaining witness.

(d) Nothing in this section shall be construed to make inadmissible any evidence offered to attack the credibility of the complaining witness as provided in § 3508 of this title.

(e) As used in this section, "complaining witness" shall mean the alleged victim of the crime charged, the prosecution of which is subject to this section. (60 Del. Laws, c. 257, § 1; 66 Del. Laws, c. 269, § 6.)

## § 3510. Admissibility of certificate of title in criminal proceedings involving motor vehicles.

In any criminal proceeding in which ownership, possession or use of a motor vehicle is an issue, a certified copy of the certificate of title on file with the Division of Motor Vehicles shall be admissible as proof of ownership of the motor vehicle. (64 Del. Laws, c. 276, § 1.)

## § 3511. Videotaped deposition and procedures for child witnesses.

(a) In any criminal case or hearing on delinquency, upon motion of the Deputy Attorney General prior to trial and with notice to the defense, the court may order all questioning of any witnesses under the age of 12 years to be videotaped in a location designated by the court. Persons present during the videotaping shall include the witness, the Deputy Attorney General, the defendant's attorney and any person whose presence would contribute to the welfare and well-being of the witness, and if the court permits, the person necessary for operating the equipment. Only the attorneys or a defendant acting pro se may question the child. The court shall permit the defendant to observe and hear the videotaping of the witness in person or, upon motion by the State, the court may exclude the defendant providing the defendant is able to observe and hear the witness and communicate with the defense attorney. The court shall ensure that:

(1) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;

(2) The recording equipment was capable of making an accurate recording, the operator was competent to operate such equipment and the recording is accurate and is not altered;

(3) Each voice on the recording is identified;

(4) Each party is afforded an opportunity to view the recording before it is shown in the courtroom.

(b) If the court orders testimony of a witness taken under this section, the witness may not be compelled to testify in court at the trial or upon any hearing for which the testimony was taken. At the trial or upon any hearing, a part or all of the videotaped deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence. If only a part of a deposition is offered in evidence by a party, an adverse party may require the party to offer all of it which is relevant to the part offered and any party may offer other parts. Objections to deposition testimony or evidence or parts thereof and the grounds for the objection shall be stated at the time of the taking of the deposition.

344

*exhibit A*

(c) The witness need not be physically present in the Courtroom when the videotape is admitted into evidence.

(d) The cost of such videotaping shall be paid by the court

(e) Videotapes where one part of the court record are subject to a protective order of the court for the purpose of protecting the privacy of the witness (65 Del. Laws, c 109 § 1; 70 Del. Laws, c. 186 § 1.)


11 Del C § 3512 who may be present.

Any victim or the victims immediate family shall have the right to be present during all stages of a criminal proceeding even if called to testify there in, unless good cause be shown by the defendant to exclude them).

1    on one of the tapes.  Actually two.  The age of two

2    in the tape with Buster Richardson.  She said the

3    abuse started at age two, and in New York.

4         MS. WITHERS:  Right.  The horse is sort of

5    out of the barn at this point, though.  So I'm not

6    even sure if the amendment is necessary I guess.

7    And I'm saying that because the complete videotaped

8    statement of the child is in evidence.  It's the

9    complete tape that has been played for the jury.

10   They've heard the statement.

11        If Your Honor simply is going to say,

12   ladies and gentlemen, you need to disregard that any

13   abuse occurred before 1997, they have a tape that

14   says otherwise.  So I don't know how we cure that.

15        THE COURT:  Well, I guess it would be

16   cured -- a suggestion of the cure was given by the

17   defense, that they would be instructed not to

18   consider any conduct prior to June 15, 1997.

19        MS. WITHERS:  Well, I wouldn't be arguing

20   in my closing that it goes back to age two really.

21   I would be focussing on what she says on the

22   videotape, which -- as many times as I've watched

23   that tape, I'm not sure she says it began when she

KATHY S. PURNELL
OFFICIAL COURT REPORTER

1            MS. DUNN:  Well, Your Honor, we're also

2     concerned --

3            THE COURT:  I'm entitled to an answer.

4            MR. HALLER:  I can tell you that Mrs. Dunn

5     and myself are not going to allege plain error and

6     that we would say that if you give that instruction,

7     it's cured.

8            THE COURT:  All right.

9            MR. HALLER:  That's what I will say.

10           THE COURT:  Thank you.

11           MR. HALLER:  I'm sure Ms. Dunn will affirm

12    that.

13           MS. DUNN:  I agree with Mr. Haller.

14           THE COURT:  Thank you.  Now, how is the

15    defense -- the State says all of this has been up

16    front in the videos and the police reports and

17    everybody knew about it.  How is the defense

18    prejudiced should an amendment be granted?  Is there

19    an effect on the defense's ability and strategy or

20    trial preparation?  What is the prejudice to the

21    defense?

22           MR. HALLER:  Well, Your Honor, I would say

23    that it's prejudiced because the rule is that you

1   shouldn't bring in other bad acts.  That's the rules

2   of evidence that we work under.

3         THE COURT:  Let's go back to June 15, '96.

4   I understand what you're talking about, bad acts.

5   But have you been prejudiced to the trial

6   preparation?  I mean there was a reliance by the

7   defense on the bill of particulars in getting ready

8   to meet the charge here in the bill of particulars.

9   I'm talking about June 15, '97 to September 12,

10   2000.

11         Has there been a reliance by the defense on

12   that, that the rug is being pulled out at time of

13   trial to go back in time?

14         MR. HALLER:  Well, the thing is, we

15   considered the earlier date in question with the

16   facts, and the facts, you know, about when they

17   moved to Delaware and all.  I mean we had that in

18   mind when we were preparing --

19         THE COURT:  All right.

20         MR. HALLER:  You know, as regards to the

21   certain motions and all during the trial, we were

22   relying on the fact that that's what the bill of

23   particulars and that's what the information said.

UNITED STATES POSTAGE
02 14
000 4608975
MAILED FROM

Legal Mail

Office of the clerk
United States District Court
844 N. King Street Lockbox 18
Wilmington Delaware
19801-3570

Legal Mail

I/M James St. Lewis
SBI# 446518  UNIT E D 33
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

U.S.M.S.
X-RAY

Legal Mail